**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES M.,[1] | : | Case No. 3:25-cv-185 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff James M. brings this case challenging the Social Security Administration's denial of his application for Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), and the administrative record. (Doc. #7).

## I. <u>Background</u>

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

In the present case, Plaintiff protectively filed his application for Supplemental Security Income on September 10, 2020, alleging disability due to several impairments, including gunshot wound to hand, anxiety, bipolar, high blood pressure, post-traumatic stress disorder (PTSD), insomnia, incontinent urine and bowel movements, multiple joint pain, left shoulder pain, and left knee pain. (Doc. #7-6, *PageID* #450). After Plaintiff's application was denied initially and upon reconsideration, he requested and received a telephone hearing before Administrative Law Judge (ALJ) Stuart Adkins. On July 20, 2022, ALJ Adkins concluded he was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. (Doc. #7-3, *PageID* #s 185-201). The Appeals Council granted Plaintiff's request for review and remanded the matter for further proceedings. *Id.* at 208-11.

On remand, the claim was returned to ALJ Adkins, who held an additional hearing on February 12, 2024. (Doc. #7-2, *PageID* #s 97-126). Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful activity since September 10, 2020, the application date.

Step 2: He has the following severe impairments: obesity, status post gunshot wounds (GSW), degenerative joint disease (DJD) of the left shoulder and left knee, hypertension (HTN), gastroesophageal reflux disease (GERD), status post bowel resection, depression, anxiety, bipolar disorder, borderline intellectual functioning (BIF), posttraumatic stress disorder (PTSD), and polysubstance use disorder.

Step 3: He does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity ("RFC"), or the most he can do, despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th

Cir. 2002), consists of "light work … except [Plaintiff] can lift and/or carry twenty pounds occasionally and ten pounds frequently; can stand and/or walk for about four hours and sit for about six hours in an eight-hour workday; can never climb ladders ropes and scaffolds; can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; can frequently balance; can occasionally reach overhead with the left upper extremity; can frequently handle and finger with the right upper extremity; can perform simple routine tasks but not at a production rate pace and without strict performance quotas; limited to occasional, superficial contact with coworkers and supervisors with 'superficial contact' defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or resolving interpersonal contacts; no interaction with the general public; can tolerate occasional changes to a routine work setting defined as one to two per week."

He has no past relevant work.

Step 5: Considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers that he can perform in the national economy.

(Doc. #7-2, *PageID* #s 42-57). Based on these findings, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, for the relevant time period. *Id.* at 57-58.

The evidence of record is adequately summarized in the ALJ's decision (*Doc. #7-2, PageID* #s 40-58), Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #11), and Plaintiff's Reply (Doc. #12). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. <u>Standard of Review</u>

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th

Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III. Discussion

Plaintiff first argues that the ALJ erred in his evaluation of the medical source opinions and medical evidence of record. (Doc. #9, *PageID* #s 1340-43). Next, Plaintiff contends that the ALJ failed to accurately and logically explain why Plaintiff does not require a cane or walker. *Id.* at 1343-45.

The Commissioner maintains that the ALJ properly considered the medical opinion evidence and evidence of record. (Doc. #11, *PageID* #s 1352-55). Additionally, the Commissioner argues that the ALJ reasonably did not include a limitation for a cane or a walker in the residential functional capacity. *Id*. at 1355-57.

**A. Evaluation of Medical Source Opinions and Medical Evidence**

Plaintiff contends that the ALJ improperly discounted the opinions of his treating physicians, Kwasi Nenonene, M.D., and Jeannine Sheppard, D.O., and the consultative examiner, Richard E. Sexton, Ph.D. (Doc. #9, *PageID* #s 1340-43). Specifically, Plaintiff takes issue with the ALJ's conclusion that their opinions are inconsistent with the treatment notes and with the ALJ's characterization of the treatment notes as unremarkable. *Id.* at 1340-41.

A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in his case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 416.920c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 416.920c(b)(2). When evaluating supportability,

the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 416.920c(b)(2). The ALJ bears the burden of "show[ing] his or her work"; in other words, the ALJ must "explain in detail *how the factors actually were applied* in each case, to each medical source." *Kenneth M. v. Comm'r of Soc. Sec.*, No. 3:24-CV-182, 2025 WL 1948987, at *12 (S.D. Ohio July 16, 2025) (Preston Deavers, M.J.) (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F.Supp. 3d 900, at *6 (E.D. Mich. 2021)); *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 1009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (internal citations omitted).

An ALJ must "provide a coherent explanation of his reasoning," *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021), and "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)); *Decorian P.R. v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1155941, at *5 (S.D. Ohio Mar. 18, 2024) (internal citation omitted). An "ALJ's failure to

meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id.*

In formulating Plaintiff's RFC, the ALJ considered the opinion of Dr. Nenonene, who has treated Plaintiff since at least August 2018. (Doc. #7-9, *PageID* #1326). Dr. Nenonene reported that Plaintiff suffers from right hip pain, left shoulder pain, muscle weakness, abdominal pain, and HTN. *Id.* at 1326. He opined that Plaintiff could frequently lift and carry ten pounds; stand and/or walk about four hours, but no more than two hours without interruption, in an eight-hour workday; and could occasionally climb, balance, stoop, crouch, kneel, and crawl. *Id.* at 1327-28. He also opined that Plaintiff has limited ability to reach, push/pull, work at heights, and work with moving machinery. *Id.* at 1328. Dr. Nenonene concluded that Plaintiff would likely be absent from work more than three times a month and would likely be off task at least two thirds of an eight-hour workday. *Id.* at 1330.

In reviewing Dr. Nenonene's recommended limitations, ALJ Adkins found his opinion to be only somewhat persuasive because it was "inconsistent with his office visit notes and objective findings that he documented." (Doc. #7-2, *PageID* #53). In support of this conclusion, the ALJ cited to some of Dr. Nenonene's physical examinations and noted they are largely unremarkable "except for occasional notations of diffuse abdominal tenderness and tenderness of the left shoulder and right hip." *Id.* The ALJ also found no objective findings of diminished strength, range of motion, muscle tone, or sensation. *Id.* The ALJ determined Dr. Nenonene's opinion was also inconsistent with the mental health treatment records. *Id.*at 56.

The ALJ also considered the opinion of Dr. Sheppard, who began treating Plaintiff in March 2021. (Doc. #7-9, *PageID* #1229). Dr. Sheppard reported that Plaintiff's mental health

diagnoses include bipolar I disorder, PTSD, cannabis use disorder, tobacco use disorder, and stimulant use disorder in sustained remission. *Id.* at 1299. Dr. Sheppard opined that Plaintiff has signs and symptoms associated with these impairments, including sleep disturbance, mood disturbances, emotional lability, delusions/hallucinations, recurrent panic attacks, paranoia/inappropriate suspiciousness, decreased energy, manic syndrome, intrusive recollections of traumatic experience, and hostility/irritability. *Id.* Dr. Sheppard concluded that Plaintiff would likely be absent from work more than three times a month and would likely be off task 20% or more of an average typical work week. *Id.* at 1300. She opined that Plaintiff had moderate limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace. *Id.* at 1301. Dr. Sheppard found Plaintiff had marked limitations in interacting with others; adapting or managing oneself; episodes of deterioration or decomposition in work; and performing activities of daily living. *Id.*

Upon review, the ALJ determined that Dr. Sheppard's opinion was only somewhat persuasive because of her finding that Plaintiff had a marked limitation in interacting with others. (Doc. #7-2, *PageID* #s 55-56). The ALJ explained that while the evidence of record supports some limitation in Plaintiff's ability to interact with others, a marked limitation in this functioning area is not supported by the record. *Id.* at 56. The ALJ found Plaintiff's mental status examinations of record largely unremarkable, even considering his medication compliance issues. *Id.*

Finally, the ALJ considered the opinion of consultative psychological examiner Dr. Sexton, who evaluated Plaintiff in October 2021. (Doc. #7-7, *PageID* #s 945-52). Based on his examination, Dr. Sexton diagnosed Plaintiff with unspecified depressive disorder, unspecified anxiety disorder, and cannabis use disorder (mild). *Id.* at 949. Dr. Sexton opined that Plaintiff "is

expected to be able to understand and apply instructions in the work setting consistent with low average intellectual functioning." *Id.* at 951. He also opined that though Plaintiff may experience a subjective sense of reduced effectiveness in his ability to concentrate, persist, or maintain pace when depressive and anxious symptoms increase, objective changes at a level prompting performance concern by others is not expected. *Id.* With respect to his ability to interact with others, Dr. Sexton concluded that Plaintiff would have some limitations in his capacity to conform to social expectations in a work setting. *Id.* Lastly, Dr. Sexton opined that Plaintiff is expected to respond appropriately to work-place pressures. *Id.*

The ALJ found Dr. Sexton's opinion somewhat persuasive. (Doc. #7-2, *PageID* #55). The ALJ explained that Dr. Sexton's opinion is "consistent with some of the objective medical evidence, including his own evaluation of [Plaintiff]." *Id.* The ALJ noted that in February 2022, while at the Eastway Behavioral Health Program, Plaintiff was found to be pleasant and cooperative, and he denied having any suicidal or homicidal ideations at that time. *Id.* (citing Doc. #7-7, *PageID* # 945-52). The ALJ also acknowledged that, as noted in the record, Plaintiff was negative for psychotic symptoms and paranoia. *Id.* (citing Doc. #7-7, *PageID* #s 945-52). Moreover, he determined that Dr. Sexton supported his findings by referencing Plaintiff's subjective and objective findings from his examination such as depressed mood, flat affect, and ability to perform simple calculations. *Id.* (citing Doc. #7-7, *PageID* #948). However, Dr. Sexton's findings were not expressed in specific vocationally relevant terms. Nonetheless, the ALJ asserted that Plaintiff's RFC fully accommodated the functional limitations and capabilities found by Dr. Sexton.

As noted above, Plaintiff asserts that the ALJ erred in his characterization of the treatment notes as inconsistent with the treating source and consultive examining medical opinions. Plaintiff argues that "the medical evidence in the instant case documents many abnormal and remarkable findings—contrary to the ALJ's conclusory finding." *Id.* at 1341. In support of his argument, Plaintiff points to various treatment notes documenting clinical signs and symptoms, including increased shortness of breath with activity, chest pain, increase in pillows needed or need to sit in chair to sleep, decreased ability to maintain activity level or follow normal routine, falls, dizziness, signs or symptoms of infection, increased pain, issues with medications, depression, anxiety, bipolar, PTSD, anger issues, irritability, hopelessness, racing thoughts, excessive worry, sleep and concentration problems, crying episodes, nightmares, flashbacks, and hypervigilance. *Id.* at 1341-43. Plaintiff concludes that "the record documents a pattern of anger outbursts, and the vocational expert testified that employers have zero tolerance for anger outbursts—whether verbal or physical." *Id.* at 1342 (quotation modified). Plaintiff also notes that the opinions of Dr. Nenonene and Dr. Sheppard are consistent with each other in opining that Plaintiff would be absent from work and off-task more than employers would allow.

Contrary to Plaintiff's assertion, the ALJ did not mischaracterize the record. Substantial evidence supports the ALJ's characterization of Plaintiff's mental status examinations and behavior as largely unremarkable, as his treatment notes routinely noted that he presented as cooperative and pleasant. (Doc. #7-8, *PageID* #s 1092-1102; Doc. #7-9, *PageID* #s 1158-1324). Indeed, the ALJ further explained:

> Although [Plaintiff] complains of anger, irritability, agitation, paranoia, etc., which would likely impede on his ability to interact with others, the evidence of record indicates [Plaintiff] has sufficient control over his symptoms. For instance, even when [Plaintiff] is not compliant with his medication and reports increased

> symptoms, there is no evidence of the necessity of [Plaintiff] to be admitted for psychiatric hospitalization voluntarily or involuntarily. Additionally, there is only one incident of record in which [Plaintiff] threat[en]ed a physician, which resulted in [Plaintiff] being discharged from that physician's office. Outside of this isolated incident, despite [Plaintiff]'s subjective complaints, his behavior is noted upon examination to be unremarkable, and he is noted to present as cooperative and pleasant within the record [(Doc. #7-7, *PageID* 530-38, 1325-31)]. Thus, in consideration of the totality of the evidence, the undersigned finds that [Plaintiff] has no more than a moderate limitation in interacting with others.

(Doc. #7-2, *PageID* #56). Although Plaintiff points to evidence that he believes is consistent with the treating source and consultive examining medical opinions, "the Court must uphold the ALJ's decision if it is supported by substantial evidence, even when there is substantial evidence to support the opposite conclusion or a reviewing court would resolve the issues of fact differently." *Sandra B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-960, 2022 WL 444724, at *8 (S.D. Ohio Feb. 14, 2022) (Litkovitz, M.J.) (citing *Luukkonen v. Comm'r of Soc. Sec*., 653 F. App'x 393, 398 (6th Cir. 2016)). Here, the undersigned finds that the ALJ provided a sufficient discussion of both the medical evidence of record and the opinion evidence of record to support his RFC determination. Therefore, the ALJ's analysis of Plaintiff's mental impairments was supported by substantial evidence.

Further, with regard to Dr. Nenonene's and Dr. Sheppard's opinions that Plaintiff would be absent from work and off-task more than employers would allow, the ALJ determined that their opinions were not consistent with the other evidence in the record—referencing three other medical source opinions that did not make such determination. *Id.* at 56; (*see* Doc #7-3, *PageID* #s 168, 179; Doc. #7-7, *PageID* #s 945-51). Thus, the ALJ did not adopt Dr. Nenonene's and Dr. Sheppard's opined limitations. "It is the ALJ's duty, not the Court's, to resolve conflicts in the medical evidence …." *See Sandra B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-960, 2022 WL 444724,

at *8 (S.D. Ohio February 14, 2022) (Litkovitz, M.J.) (citing *Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 398 (6th Cir. 2016)). Here, substantial evidence supported the ALJ's resolution of the conflict in the medical opinions.

In sum, the ALJ did not err in his treatment of the opinions of Dr. Nenonene, Dr. Sheppard, and Dr. Sexton. 20 C.F.R. § 416.920c(b)(2). Further, the ALJ provided "a coherent explanation of [his] reasoning," *Lester*, 2020 WL 8093313, at *14, that "set forth a 'minimum level of articulation'" in addressing the level of persuasion attributed to the opinions of Dr. Nenonene, Dr. Sheppard, and Dr. Sexton. *Warren*, 2021 WL 860506, at *8. In his decision, the ALJ clearly "shows his or her work" and provides a clear and accurate logical bridge. *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-cv-129, 2022 WL 4484603, at *11–12 (S.D. Ohio Sept. 27, 2022) (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 2021 WL 3702170, at *6 (E.D. Mich. 2021)). The mere presence of evidence in favor of an opposite finding does not amount to reversible error. *Sandra B.*, 2022 WL 444724, at *8. As the Plaintiff has demonstrated no substantive or procedural errors, the undersigned finds his arguments are without merit.

**B. Use of Cane**

An individual's RFC may be impacted by a requirement to use a hand-held assistive device. However, if a cane is not medically required, it cannot be considered a restriction or limitation on an individual's ability to work. *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002). Social Security Ruling 96-9p[2] ("SSR 96-9p") addresses the use of an assistive device in determining an individual's RFC and the vocational implications of such devices:

[2] In this case, Plaintiff contends that SSR 96-9p is only applicable when a plaintiff remains capable of sedentary work. Since the ALJ in this case found Plaintiff to be capable of light work, he argues that SSR 96-9p is inapplicable in this case. (Doc #12, *PageID* #s 1362-67). However, the ALJ did not cite to or rely upon any part of SSR 96-9p. More importantly, regulations that apply to every case make clear that it is Plaintiff's burden to prove his limitations,

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

Soc. Sec. R. 96-9p, 1996 WL 374185, at *7 (Soc. Sec. Admin. July 2, 1996). Notably, evidence of a prescription for an assistive device is not alone sufficient to support a finding that it is medically required. *Ross v. Comm'r of Soc. Sec.*, No. 2:17-CV-169, 2018 WL 580157, at *6 (S.D. Ohio Jan. 29, 2018) (Vascura, M.J.), *report and recommendation adopted*, No. 2:17-CV-169, 2018 WL 1406826 (S.D. Ohio Mar. 21, 2018) (Marbley, D.J.) ("Thus, the undersigned rejects Plaintiff's contention that a doctor's prescription for an assistive device amounts to an opinion that a cane is 'medically necessary' within the context of evaluating claims for social security benefits."). The "burden to prove through clinical evidence that a cane is medically required" is on the plaintiff. *Baker v. Comm'r of Soc. Sec.*, No. 2:19-CV-4323, 2020 WL 2213893, at *7 (S.D. Ohio May 7, 2020) (Morrison, D.J.) (quoting *Strain v. Comm'r of Soc. Sec. Admin.*, No. 5:12-cv-1368, 2013 WL 3947160, at *2 (N.D. Ohio Aug. 1, 2013)).

Plaintiff argues that the ALJ failed to provide any logical reasoning for failing to incorporate Plaintiff's use of a cane or a walker into his RFC determination and instead substituted his lay judgment of Plaintiff's treating providers. (Doc. #9, *PageID* #1343). In support of his argument, Plaintiff notes that his physical therapist, Brett Haworth, recommended and ordered a cane for Plaintiff in December 2020. *Id.* (citing Doc #7-7, *PageID* #s 822-23). During the same visit, Mr. Haworth observed Plaintiff's gait to be antalgic. *Id.* (citing Doc #7-7, *PageID* #823).

---

including his need for a cane. *See* 20 C.F.R. § 416.912(a)(2) ("The evidence in your case record must be complete and detailed enough to allow us to make a determination...about whether you are disabled," including the "nature and severity of your impairment(s) for any period in question."); *see also Michael T. v. Comm'r of Soc. Sec.*, No. 2:22-CV-2148, 2023 WL 2140984, at *5 (S.D. Ohio Feb. 21, 2023).

Mr. Haworth also placed Plaintiff on homebound status. (Doc. #7-7, *PageID* #854). Plaintiff also relies on December 2020 treatment notes from Fidelity Health Care Clinical in which it was observed that Plaintiff had an unsteady gait/poor balance, gait deficit, fall risk, and shortness of breath when walking/minimal exertion. *Id.* (citing Doc #7-7, *PageID* #899). The treatment notes state that Plaintiff had a single point cane. *Id.* (citing Doc #7-7, *PageID* #899).

Plaintiff's argument is not well taken. On one occasion, Plaintiff's physical therapist prescribed him a cane. (Doc. #7-7, *PageID* #823). However, the prescription did not identify the circumstances or duration for which it was needed. *Cayenne W. v. Comm'r of Soc. Sec.*, No. 2:23-CV-1282, 2024 WL 1155851, at *7 (S.D. Ohio Mar. 18, 2024) ("Plaintiff's one-time prescription for a walker does not provide sufficient detail to show that the walker was a 'medical necessity' for at least a 12-month period either at that time, or at any other time"); *Salem v. Colvin*, CASE NO. 14-CV-11616, 2015 WL 12732456 *4 (E.D. Mich. Aug. 3, 2015) (finding the ALJ did not err in not including a limitation for a cane, when it had been prescribed, but the prescription did not "indicate the circumstances in which [the Plaintiff] might require the use of a cane"); *Marko v. Comm'r of Soc. Sec.*, Case No. 2:16-cv-12204, 2017 WL 3116246 at *5 (E.D. Mich. July 21, 2017) (rejecting plaintiff's assertion that the ALJ failed to account for her use of a cane, stating that nothing in the physician's "mere prescription for a cane provides evidence to indicate the frequency with which the cane should be used, its purpose, or its limit upon Plaintiff's ability to perform light work" (internal citations omitted)).[3] Further, as discussed by the ALJ, the medical

[3] The ALJ does not expressly discuss the physical therapist's prescription. However, to the extent that is an error, it is a harmless error. *See, generally, Rodgers-Eaches v. Comm'r of Soc. Sec.*, Case No. 1:20-cv-69, 2021 WL 164254, at *8 (S.D. Ohio, 2021), *adopted at* 2022 WL 190043 (S.D. Ohio Jan. 21, 2022) ("Because plaintiff has not pointed to medical documentation in the record that shows her cane was medically required, any error the ALJ committed by failing to more thoroughly evaluate plaintiff's use of a cane was harmless error.").

treatment records do not support a finding that Plaintiff's cane is "medically necessary." (Doc. # 7-2, *PageID* #53). While Plaintiff was observed to have an antalgic gait during December 2020, his physical exams consistently found his gait to be normal. (Doc. #7-8, *PageID* #s 1014-1102). Additionally, in February 2024, Dr. Nenonene noted that Plaintiff did not require a cane or other assistive device for ambulation or balance. (Doc. #7-9, *PageID* #1330).

Plaintiff has failed to show that the mere existence of a prescription for a cane is sufficient in this case to establish that his cane is medically necessary. Instead, the ALJ reasonably discounted Plaintiff's subjective report that he needed a cane after discussing relevant record evidence. *See Johnson v. Comm'r of Soc. Sec.*, 535 Fed. App. 498 508 (6th Cir. 2013) ("Because the ALJ found that the evidence did not suggest that [Plaintiff] needed a cane, it was not erroneous for the ALJ to exclude this factor in determining [Plaintiff's] RFC"). Therefore, Plaintiff has not carried his burden to prove through clinical evidence that the cane was "medically necessary," and the ALJ did not err in excluding use of the cane from Plaintiff's RFC.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Statement of Errors (Doc. #9) is **OVERRULED**;
2. The Commissioner's non-disability determination is **AFFIRMED**; and
3. The case be terminated on the Court's docket.

September 29, 2026

*s/ Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge